## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONALD GABRIEL, | ) |
| | ) |
| Plaintiff, | ) Case No. __19-cv-9095__ |
| | ) |
| v. | ) JURY TRIAL DEMANDED |
| | ) |
| OLD LINE BANCSHARES INC., JAMES W. | ) |
| CORNELSEN, CRAIG E. CLARK, GREGORY | ) |
| STEPHEN PROCTOR JR., ROSIE ALLEN- | ) |
| HERRING, STEVEN K. BREEDEN, JAMES R. | ) |
| CLIFFORD SR., STEPHEN J. DEADRICK, | ) |
| JAMES F. DENT, ANDRÉ J. GINGLES, | ) |
| THOMAS H. GRAHAM, GAIL D. MANUEL, | ) |
| JEFFREY A. RIVEST, SUHAS R. SHAH, and | ) |
| JOHN M. SUIT II, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, Donald Gabriel, by his undersigned attorneys, for this complaint against Defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against Old Line Bancshares, Inc. ("Old Line Bancshares" or the "Company")  and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Old Line Bancshares, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9.  Plaintiff's claims arise in connection with the proposed acquisition of Old Line Bancshares by Wesbanco, Inc. ("Wesbanco").

2.      On July 23, 2019, Old Line Bancshares and Wesbanco entered into an agreement and plan of merger (the "Merger Agreement"), providing for Wesbanco's acquisition of Old Line Bancshares, with Wesbanco continuing as the surviving corporation (the "Proposed Transaction").

3.      Pursuant to the terms of the Merger Agreement, Old Line Bancshares' shareholders will be entitled to receive 0.7844 shares of Wesbanco common stock for each share of Old Line Bancshares common stock they own, an estimated exchange rate of approximately $29.56 per share of Old Line Bancshares common stock based on the trading price of Wesbanco common stock at the time the Proposed Transaction was announced (the "Merger Consideration").

4.      On or about September 24, 2019, in order to convince Old Line Bancshares' public common stockholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Schedule 14(a) Definitive Proxy Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.      In particular, the Proxy contains materially incomplete and misleading information concerning the background of the Proposed Transaction and the valuation analyses performed by Old Line Bancshares' financial advisors, Keefe Bruyette & Woods, Inc. ("KBW" or the "Financial Advisors") regarding the Proposed Transaction.

6.      The Proposed Transaction is expected to close in the Fourth Quarter of this year or the First Quarter of 2020 and the special meeting of the Company's shareholders to vote on the Proposed Transaction is scheduled for October 29, 2019.   Therefore, it is imperative that the material information that has been omitted from the Proxy is disclosed prior to the special meeting, so Plaintiff can properly exercise his corporate voting rights.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and

until the material information discussed below is disclosed to Old Line Bancshares' public common stockholders sufficiently in advance of the upcoming shareholder vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.  Indeed, Old Line Bancsahres' common stock trades on the Nasdaq Capital Market exchange ("Nasdaq"), which is headquartered in this District.  *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

11.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Old Line Bancshares common stock.

12.     Defendant Old Line Bancshares is a public company incorporated under the laws of Maryland, which acts as the parent company of Old Line Bank, a Maryland-chartered trust company with the powers of a commercial bank.  Old Line Bancshares is registered as a bank holding company under the Bank Holding Company Act of 1956, as amended, and subject to regulation by the Federal Reserve Board and the Maryland Commissioner.  The Company is headquartered at Bowie, Maryland with its principal office located at 1525 Pointer Ridge Place, Bowie, Maryland 20716, approximately 10 miles east of Andrews Air Force Base and 20 miles east of Washington D.C.  Old Line Bancshares common stock is traded on the Nasdaq under the ticker symbol "OLBK."

13.     Individual Defendant James W. Cornelsen ("Cornelsen") is, and has been at all relevant times, the President and Chief Executive Officer of the Company, and a director of the Company.

14.     Individual Defendant Craig E. Clark ("Clark") is, and has been at all relevant times, the Chairman of the Company's Board of Directors.

15.     Individual Defendant Gregory Stephen Proctor, Jr. ("Proctor") is, and has been at all relevant times, a director of the Company.

16.     Individual Defendant Rosie Allen-Herring ("Allen-Herring"), is and has been at all relevant times, a director of the Company.

17.     Individual Defendant Steven K. Breeden ("Breeden") is, and has been at all relevant times, a director of the Company.

18.     Individual Defendant James R. Clifford, Sr. ("Clifford") is, and has been at all relevant times, a director of the Company.

19.     Individual Defendant Stephen J. Deadrick ("Deadrick") is, and has been at all relevant

4

times, a director of the Company.

20.     Individual Defendant James F. Dent ("Dent") is, and has been at all relevant times, a director of the Company.

21.     Individual Defendant André J. Gingles ("Gingles") is, and has been at all relevant times, a director of the Company.

22.     Individual Defendant Thomas H. Graham ("Graham") is, and has been at all relevant times, a director of the Company.

23.     Individual Defendant Gail D. Manuel ("Manuel") is, and has been at all relevant times, a director of the Company.

24.     Individual Defendant Jeffrey A. Rivest ("Rivest") is, and has been at all relevant times, a director of the Company.

25.     Individual Defendant Suhas R. Shah ("Shah") is, and has been at all relevant times, a director of the Company.

26.     Individual Defendant John M. Suit, II ("Suit") is, and has been at all relevant times, a director of the Company.

27.     The Defendants identified in paragraphs 13 through 26 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with the Company, the "Defendants."

28.     Nonparty Eric D. Hovde ("Hovde") was a director of the Company until his abrupt resignation on July 24, 2019, the day after the Proposed Transaction was announced.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company and the Proposed Transaction

29.     Old Line Bancshares was incorporated under the laws of the State of Maryland on April 11, 2003 to serve as the holding company of Old Line Bank.  Old Line is the parent company

of Old Line Bank, a Maryland-chartered trust company with the powers of a commercial bank. Proxy, 21.

30.    Old Line Bank has 37 branches located in its primary market area of the suburban Maryland (Washington, D.C. suburbs, Southern Maryland, and Baltimore suburbs) counties of Anne Arundel, Baltimore, Calvert, Carroll, Charles, Harford, Howard, Frederick, Montgomery, Prince George's and St. Mary's, and Baltimore City.   It also targets customers throughout the greater Washington, D.C. and Baltimore metropolitan areas.   Proxy, 21.

31.    As of June 30, 2019, Old Line Bancshares had approximately $3.1 billion of consolidated total assets, $2.4 billion of deposits, $2.4 billion of loans, and $389.3 million of stockholders' equity.   Proxy, 21.

32.    Prior to the announcement of the Proposed Transaction, Old Line Bancshares had exceptional long-term prospects.   Indeed, as the Company announced in its April 24, 2019 Press Release entitled *Old Line Bancshares, Inc. Reports Net Income of $8.5 Million, a 40% Increase, for the Quarter Ended March 31, 2019*:

> James W. Cornelsen, President and Chief Executive Officer of Old Line Bancshares, stated: "I am pleased to report favorable earnings for the first quarter of 2019 and look forward to the remainder of the 2019 year.   Our core deposits increased by $39.4 million during the quarter, including $20.9 million in non-interest bearing deposits, as we continue to build relationships while providing superior service. ***We believe with our existing branches, our lending staff, our corporate infrastructure, solid balance sheet, and strong capital position, we can continue to focus our effects on improving earnings per share and enhancing stockholder value.***"

33.    Thus, the Proposed Transaction comes at a time when Old Line Bancshares' recent and future success was not fully reflected by its share price.   The Proposed Transaction will "compensate" Old Line Bancshares stockholders with an amount of stock in the combined company that fails to adequately compensate them for the intrinsic value of their shares.

34.    Despite Old Line Bancshares' intrinsic value and growth prospects, the Individual Defendants are agreeing to a merger that deprives Old Line Bancshares' public stockholders of the

ability to partake in the Company's individual growth and instead dilutes the value of their Old Line

Bancshares stock with a less valuable exchange of Wesbanco stock.  The Individual Defendants

breached their fiduciary duties owed to the Company's stockholders by agreeing to the Proposed

Transaction for the unfair Merger Consideration, and by allowing the unfair and flawed sales process

to unfold in the manner that it did, which will cause Plaintiff and the Class to receive an inadequate

Merger Consideration.

**Background of the Merger and the Announcement of the Proposed Transaction**

35.    On April 22, 2010, Old Line Bancshares appointed a special committee of its board

of directors to review potential strategic opportunities in general (the "Strategic Opportunities

Committee"), with Hovde and Defendants Proctor, Dent, Cornelsen, and Suit acting as Strategic

Opportunities Committee members, and with Defendant Clark acting as the Strategic Opportunities

Committee Chair.  Proxy, 51.

36.    On May 27, 2015, Cornelsen met with Todd F. Clossin ("Clossin"), President and

Chief Executive Officer of Wesbanco.  Proxy, 51.  Clossin "expressed an interest in Old Line

Bancshares' market area with respect to possible future growth," and Cornelsen and Clossin "kept in

touch over the next several years."  *Id.*  In mid-2018, Cornelsen learned that Wesbanco "may again

have an interest in acquisitions within Old Line bank's market area," and "Messrs. Clossin and

Cornelsen and a representative of KBW had a dinner meeting on October 1, 2018, during which they

discussed the possibility of a merger between Wesbanco and Old Line Bancshares."  *Id.*  The Proxy

does not state how Cornelsen "learned" that Wesbanco may have had an interest at that time.  Proxy,

51.

37.    In mid-February 2019, Clossin contacted Cornelsen and "indicated that he would like

to start substantive discussions regarding Wesbanco's potential acquisition of Old Line Bancshares."

Proxy, 52.  When Cornelsen contacted Individual Defendants Clark and Proctor and the Company's

outside counsel to inform them of Wesbanco's interest, they suggested convening a meeting of the Strategic Opportunities Committee, which occurred on February 27, 2019, and during which the Strategic Opportunities Committee approved the engagement of KBW as the Company's financial advisor and directed management, with KBW's assistance to conduct further merger discussions. Proxy, 52.  The Proxy does not state whether the Strategic Opportunities Committee directed management and KBW to reach out to additional potential counterparties or directed management and KBW to engage in further "merger discussions" with Wesbanco, only.

38.     On March 15, 2019, Old Line Bancshares and Wesbanco entered a nondisclosure agreement (the "NDA") to exchange non-public information.  Proxy, 52-53.  The Proxy does not state whether the NDA included a standstill agreement and, if so, whether the standstill agreement included a "Don't Ask, Don't Waive" clause or a "fall away" provision that would terminate the standstill agreement in the event that the Company entered into an alternate transaction.

39.     On April 4, 2019, Clossin sent Cornelsen a non-binding initial indication of interest (the "Initial Indication of Interest") to acquire Old Line Bancshares in an all-stock transaction based on a fixed exchange ratio of 0.7654 to 0.7905 shares of Wesbanco common stock for each share of Old Line Bancshares common stock, which, based on Wesbanco's trading price at the time, was equivalent to about $30.50 to $31.50 per share of Old Line Bancshares common stock.  Proxy, 53. The Initial Indication of Interest further "proposed to cash out Old Line Bancshares stock options at closing, that Messrs. Cornelsen and Proctor would join the combined board of directors of Wesbanco and Wesbanco Bank, and the formation of an advisory board that the other Old Line Bancshares directors would be invited to join, as well as a 60-day exclusivity period.  *Id.*  The Initial Indication of Interest further "proposed that Wesbanco would retain Mr. Cornelsen as Chairman of the Mid-Atlantic Region Advisory Board and offer him a two-year employment agreement."  *Id.*

40.     The Strategic Opportunities Committee met to discuss the Initial Indication of Interest

and "authorized continued discussions with Wesbanco, approved the 60-day exclusivity period, and authorized Old Line Bancshares' entry into an indication of interest with Wesbanco." Proxy, 53. Wesbanco and Old Line Bancshares executed "a final indication of interest on April 11, 2019," the material terms of where were "consistent with those set forth in the initial indication of interest on April 4, except that in the executed indication of interest, Wesbanco agreed to waive any requirements under Mr. Cornelsen's agreements with Old Line Bank of employment termination as a condition to his receiving any change in control or non-competition payments that he would otherwise be entitled to thereunder." *Id.*

41.     On June 6, 2019, Wesbanco transmitted its first draft of the merger agreement, and included therewith "a stated exchange ratio of 0.7780 shares of Wesbanco common stock for each share of Old Line Bancshares common stock, which represented approximately the midpoint of the range provided by Wesbanco in the indication of interest." Proxy, 53. "Significant discussion of the assumptions regarding the potential transaction occurred between June 6, 2019 and June 21, 2019," when Wesbanco "provided an updated exchange ratio of 0.7844 shares of Wesbanco common stock for each outstanding share of Old Line Bancshares common stock." Proxy, 54.

42.     On June 25, 2019, when Cornelsen and KBW "updated director Eric Hovde on the terms of the transaction," Hovde "expressed concern about the exchange ratio and the process undertaken in the proposed merger," but concluded "by stating that he would not block the merger from going forward." Proxy, 54. Following the call, KBW advised Clossin "that the exchange ratio needed to be higher," but "Clossin responded that Wesbanco would not increase the exchange ratio." *Id.* When the Strategic Opportunities Committee convened on June 26, 2019, "Hovde reiterated the concerns he expressed during the June 25, 2019 phone call with Mr. Cornelsen and KBW, as well as the statement that he would not block the merger from going forward," but the Strategic Opportunities Committee voted to bring the proposed merger to the full board of directors with a recommendation

that it be approved by the full board notwithstanding Hovde's "concerns." *Id.* The Proxy does not identify what aspects of "the process undertaken in the proposed merger" caused Hovde to express "concerns," and does not state whether the Strategic Opportunities Committee unanimously voted to bring the proposed merger to the full Board.

43.     On July 2, 2019, the full Board met regarding the proposed merger with Wesbanco. Proxy, 54. "During this meeting, the board asked Mr. Cornelsen to provide a history of discussions with Wesbanco and other institutions that led to that day's meeting to consider the Wesbanco acquisition proposal. Mr. Cornelsen proceeded to provide an overview of this contacts with Mr. Clossin as well as other potential acquirors, as discussed above in more detail, as well as the terms of the initial and final indications of interest, and the due diligence process conducted by the parties." *Id.* After KBW verbally rendered its fairness opinion, "the board discussed other potential strategic options for Old Line Bancshares, including the potential interest level of other acquirers in an acquisition of Old Line Bancshares," during which "director Eric Hovde re-iterated his concerns about the exchange ratio and the process undertaken in the proposed merger." Proxy, 54-55. Following the discussion, "the Old Line Bancshares board of directors, with Mr. Hovde abstaining, approved the merger agreement and the transactions contemplated by the merger agreement, up to and including the merger, declared the merger advisable, and authorized Old Line Bancshares' President and Chief Executive Officer to execute and deliver the definitive merger agreement." Proxy, 55. The Proxy does not state the substance of Cornelsen's contacts with other potential acquirors and does not state the substance of the Board's discussion regarding these other potential acquirors.

44.     When Clossin informed Cornelsen that Wesbanco would not finalize the Proposed Transaction "without the unanimous approval by the Old Line Bancshares board of directors unless Mr. Hovde was willing to enter into a voting agreement and general release," Wesbanco and Old Line

Bancshares "engaged in discussions and negotiations" with Hovde and his legal counsel.  Proxy, 55.

On July 13, 2019, Hovde "reconsidered and agreed to vote and approve the merger and the merger

agreement and negotiate acceptable terms for his executing a voting agreement."  *Id.*  On July 23,

2019, after discussing the process for approval, the board of directors of Old Line Bancshares

unanimously approved the Proposed Transaction.  Proxy, 56.  The Proxy does not state the terms

upon which Hovde found "acceptable" for executing a voting agreement, though it does state that

"Wesbanco has consented to allow Mr. Hovde and H Bancorp to sell those shares in market

transactions beginning on August 23, 2019."  Proxy, 114.

45.     Wesbanco and Old Line Bancshares "executed the merger agreement on July 23,

2019 and issued a joint press release announcing the Proposed Transaction following the close of

trading markets:

WESBANCO, INC ANNOUNCES AGREEMENT AND PLAN OF
MERGER WITH OLD LINE BANCSHARES, INC.

Company Release – 7/23/2019 4:20 PM ET


WHEELING, W.Va., July 23, 2019 /PRNewswire/ -- WesBanco, Inc. ("WesBanco")
(Nasdaq:WSBC) and Old Line Bancshares, Inc. ("Old Line") (Nasdaq:OLBK) jointly
announced today that they have executed a definitive Agreement and Plan of Merger
providing for the merger of Old Line with and into WesBanco. Christopher V. Criss,
Chairman of the Board, and Todd F. Clossin, President and Chief Executive Officer, of
WesBanco and Craig E. Clark, Chairman of the Board, and James W. Cornelsen, President
and Chief Executive Officer, of Old Line, made the joint announcement.

Under the terms of the Agreement and Plan of Merger, which has been approved by the
board of directors of both companies, WesBanco will exchange shares of its common stock
for all of the outstanding shares of Old Line common stock, in an all-stock transaction. Old
Line stockholders will be entitled to receive 0.7844 of a share of WesBanco common stock
for each share of Old Line common stock they own upon the effective time of the merger,
for an aggregate merger consideration valued at approximately $500 million, or $29.22 per
share, based on WesBanco's closing stock price of $37.25 as of July 22, 2019. The
transaction values Old Line at a price to June 30, 2019 tangible book value per share of
177.0%, and a price to mean analyst estimated 2019 earnings per share of 13.4 times. The
merger is expected to qualify as a tax-free reorganization.

Todd F. Clossin, President and Chief Executive Officer of WesBanco, stated, "We are pleased to welcome the customers and employees of Old Line to the WesBanco family. This is an exciting time in the measured and thoughtful evolution and strategic diversification of WesBanco. The merger with Old Line is an example of the continued solid execution on our long-term growth strategies, as it brings together two high-quality institutions with disciplined risk cultures and a strong customer focus. During the last three years, we have significantly diversified our institution into new, high-growth markets with great demographics that will now span six states across the Midwest, Mid-South, and, now, the Mid-Atlantic region as a top ten financial institution in the state of Maryland. WesBanco prides itself on delivering large bank capabilities with a community bank feel, which is one of the key reasons we were recently named the #7 best bank in America by *Forbes* magazine. We look forward to providing our newest markets and customers with a broader array of banking services, including expanded commercial and mortgage lending capabilities, as well as trust and wealth management services."

Excluding certain merger-related charges, the transaction is anticipated to be 4.3% accretive to earnings in 2020, and 6.2% accretive to earnings in 2021, once anticipated cost savings of approximately 31% are phased-in fully. Estimated tangible book value dilution at closing of 3.8% is expected to be earned back in approximately 3.3 years using the "cross-over" method, including estimated pre-tax merger-related charges of approximately $30 million. The acquisition is subject to the approvals of the appropriate regulatory authorities and approvals by the shareholders of both WesBanco and Old Line. It is expected that the transaction should be completed during the next two to three quarters.

Upon completion of the merger, WesBanco will add two Old Line directors, anticipated to be James W. Cornelsen and Gregory S. Proctor, Jr., to its board of directors, with other current Old Line directors comprising an Advisory Board for the Mid-Atlantic Market, led by Mr. Cornelsen. In addition, Mark A. Semanie, Old Line's current Executive Vice President and Chief Operating Officer, will join WesBanco as Market President of the Mid-Atlantic Market.

"We are excited to announce our merger with WesBanco and become an integral part of its nearly 150 year history as a community bank," said Mr. Cornelsen. "WesBanco's strong track record of operating performance, merger success, and customer-centric focus makes them the ideal partner for Old Line. The combination of our two strong institutions will provide additional high quality products and services for our customers, as well as growth opportunities for our employees. In addition, I look forward to continuing my relationship as a member of the WesBanco Board of Directors and as Chairman of the Mid-Atlantic Market for WesBanco to help ensure a smooth transition in the local market."

At June 30, 2019, WesBanco had consolidated assets of approximately $12.5 billion, deposits of $8.7 billion, loans of $7.7 billion, and shareholders' equity of $2.1 billion.

At June 30, 2019, Old Line had consolidated assets of approximately $3.1 billion, deposits of $2.4 billion, loans of $2.4 billion, and shareholders' equity of $0.4 billion.

When the transaction is consummated, WesBanco will have approximately $15.6 billion in total assets and will provide banking and financial services through 236 financial centers in

six states. The transaction will expand WesBanco's franchise by 37 offices located throughout Maryland, primarily in the Washington D.C. and Baltimore, MD MSAs.

As a condition to WesBanco's willingness to enter into the Merger Agreement, all of the directors and all of the executive officers of Old Line have entered into voting agreements with WesBanco pursuant to which they have agreed to vote their shares in favor of the merger. The anticipated two to three quarter time period leading to the consummation of the merger has officials of both organizations optimistic that organizing around customer service and product delivery can be accomplished with as little employee disruption as possible.

Financial advisors involved in the transaction were D.A. Davidson & Co., representing WesBanco, and Keefe, Bruyette & Woods, Inc., representing Old Line.

Legal representations in the transaction include Phillips Gardill Kaiser & Altmeyer PLC and K&L Gates LLP for WesBanco, and Baker, Donelson, Bearman, Caldwell & Berkowitz, PC for Old Line.

46.     Hovde resigned from the Company's Board the following day, July 24, 2019. Proxy, 56.

**The Preclusive Deal Protection Devices**

47.     To the detriment of the Company's shareholders, the Individual Defendants agreed, in the Merger Agreement, to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and all but ensure that the Proposed Transaction is consummated and that no competing offers emerge for the Company.

48.     Section 5.03 of the Merger Agreement is a restrictive "no-shop" provision that prohibits the members of the Board from soliciting proposals relating to alternative offers or business combinations.

49.     Section 5.03(a) of the Merger Agreement strictly prohibits, except under extremely limited circumstances, the Individual Defendants from engaging in discussions or negotiations relating to proposals regarding alternative acquisitions or business combinations

50.     Sections 5.03(c) of the Merger Agreement requires the Board to provide Wesbanco with written notice of any Acquisition Proposal within twenty-four (24) hours of its receipt.  Sections 5.03(b), (d), and (f) likewise require the Board to provide prior written notice of at least three (3)

business days of its intention to terminate the Merger Agreement in favor of any Superior Proposal and negotiate with Wesbanco following Wesbanco's receipt of the notice, so that Wesbanco has the opportunity to adjust the terms and conditions of the Merger Agreement so that the Acquisition Proposal ceases to be a Superior Proposal.

51.     In addition, the Merger Agreement provides that the Company will be required to pay to Wesbanco a termination fee of $16,000,000.00 with respect to any termination under the No-Shop provisions of the Merger Agreement.

52.     The Merger Agreement also effectively holds the Company's stockholders hostage by providing that the Company will be required to pay the same termination fee, $16,000,000.00, in the event that the Company's stockholders do not approve the merger and the Company subsequently enters into an alternative Acquisition Transaction with anyone other than Wesbanco.

53.     Ultimately, these preclusive deal protection devices restrained and continue to restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company, and further restrain the Company's public stockholders' ability to disapprove the Proposed Transaction.  The aggregate effect of these preclusive deal protection devices, viewed in light of the materially inadequate consideration offered for the Company's shares in the Proposed Transaction, supports an inference that the Board was not acting in good faith in approving the terms of the Merger Agreement.

54.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's shareholders will continue to suffer absent judicial intervention.

**The Proxy Omits Material Information**

55.     On or about September 24, 2019, in order to convince Old Line Bancshares' public common stockholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of the materially incomplete and misleading Proxy with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

56.   The special meeting of Old Line Bancshares stockholders to vote on the Proposed Transaction is forthcoming.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

57.   Specifically, the Proxy omits two types of material information: (i) information regarding the background of the transaction and the Individual Defendants' potential conflicts of interest, and (ii) information that renders the Company's Financial Advisors' fairness analysis materially false, misleading, or incomplete.

A.   The Proxy Omits Material Information Regarding the Background of the Transaction

58.   The Proxy fails to disclose how Cornelsen "learned" that Wesbanco "may" have been interested in acquiring the Company in mid-2018.  This information is material to investors deciding how to vote on the Proposed Transaction because, in light of the fact that the Proxy does not discuss any other potential counterparties, it raises the possibility that Cornelsen never considered the possibility of an alternative buyer, perhaps because he was aware that Wesbanco would be willing to negotiate the Individual Defendants' future employment and directorship in the combined company while they were still negotiating the terms of the Merger Consideration.

59.   Although the Proxy repeatedly references the Board discussing Cornelsen's contacts with "other financial institutions" as potential acquirors, it fails to disclose entirely the number, timing, substance, and extent of these contacts.  On the face of the Proxy, it is impossible to determine to what extent the Company conducted a market check to gauge the interest of other potential counterparties or if the Company immediately agreed to the exclusivity period with Wesbanco without reaching out to other potential counterparties at all.  This information is material to

shareholders deciding whether to vote in favor of the Proposed Transaction because KBW's fairness analysis is a "pale substitute for the dependable information that a canvas of the relevant market can provide." *Barkan v. Amsted Industries, Inc.*, 567 A.2d 1279, 1287 (Del. 1989).

60.     The Proxy fails to disclose the nature of Hovde's concerns regarding the "process undertaken in the proposed merger," which were, perhaps, the Company's apparent failure to make any effort to engage with other potential counterparties and negotiation of the Individual Defendants' future employment and directorship during the pendency of the negotiation of the Merger Consideration.

61.     The Proxy fails to disclose whether the NDA executed on March 15, 2019 included a standstill agreement and, if so, whether the standstill agreement included a "Don't Ask, Don't Waive" clause or a "fall away" provision.

## B.   The Proxy Omits Material Information Regarding the Financial Advisors' Fairness Analysis

62.     The Proxy also omits material information regarding the Company's Financial Advisors' Fairness Opinion and the various valuation analyses that the Company's Financial Advisors performed to render the opinion but fails to provide enough information regarding the necessary data, support for conclusions, or the existence of, or basis for, the underlying assumptions that underpin the fairness opinion.  Specifically, the Proxy does not disclose enough information regarding the financial projections, inputs and assumptions for various financial valuations, and the Financial Advisors' potential conflicts of interest.  Without this information, stockholders cannot replicate the analyses, confirm the valuations, evaluate the Financial Advisors' opinion that the Merger Consideration is fair, or accurately assess the reliability of the Fairness Opinion.  The informative value of the Fairness Opinion is not in its conclusions, but in the valuation analyses that support them.  Thus, the key inputs, which are intrinsically baked into those conclusions, must also be fairly

disclosed.

63.     With respect to the management projections, the Proxy fails to disclose material information. With respect to these financial projections, directors are obligated to provide complete valuation metrics to shareholders, particularly in cash-out transactions where non-GAAP metrics were used by the banker, since such metrics are not uniformly defined and shareholders are therefore unable to assess the utility and legitimacy of the actual metrics without seeing the underlying components.

64.     Notably, the Proxy fails to provide cash flow projections for the standalone companies and the pro forma combined company entirely, instead providing projections of Wesbanco's and Old Line Bancshares standalone 2019 and 2020 Earnings Per Share, along with a completely unsubstantiated "estimated long-term EPS growth rate" for each standalone company's EPS without any itemization, breakdown, or explanation as to how those EPS and long-term EPS growth rates were calculated or derived.  These cash flow projections were prepared and provided to Wesbanco and the Company's Financial Advisors but were inexplicably concealed from the Company's public stockholders.  Proxy, 90-91.  As the Proxy suggests that the Company not only did not perform a market check but also entered an exclusivity agreement almost immediately upon receipt of the lone interested party's Initial Indication of Interest, the failure to disclose these projections is unquestionably materially misleading to the Company's public shareholders.  *See, e.g., In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 177 (Del. Ch. 2007) (finding a proxy materially incomplete because it "fails to disclose the projections William Blair used to perform the discounted cash flow valuation supporting its fairness opinion."); *Blueblade Capital Opportunities, LLC v. Norcraft Cos., Inc.*, C.A. No. 11184-VCS, 2018 Del. Ch. LEXIS 255, at *58 (Del. Ch. July 27, 2018) ("The most important input necessary for performing a proper DCF is a projection of the subject company's cash flows.  Without a reliable estimate of cash flows, a DCF analysis is simply a

guess."); *Laborers Local 235 Benefit Funds v. Starent Networks, Corp.*, C.A. No. 5002-CC, 2009 Del. Ch. LEXIS 210, at *2 (Del. Ch. Nov. 18, 2009) (describing the discounted cash flow analysis as "arguably the most important valuation metric").

65.     Regarding KBW's *Old Line Bancshares Selected Companies Analysis* beginning on Page 82 and *Wesbanco Selected Companies Analysis* beginning on Page 84, the Proxy fails to disclose the individual financial metrics for each of the selected companies.  Without this information, it is impossible to determine whether KBW included outlier companies that should not have been selected, and it is impossible for the Company's public shareholders to replicate the analysis after removing these outliers.  *Cf., In re PNB Hldg. Co. S'holders Litig.*, 2006 Del. Ch. LEXIS 158, at *96 n.125 (Del. Ch. Aug. 18, 2006) (rejecting comparable companies analysis where the "comparable publicly-traded companies all were significantly larger than [the subject company], with one having total assets of $587 million as compared to [the subject company's] assets of $216 million").  Indeed, the financial metrics provided suggest that the companies that KBW selected may not have been comparable at all in light of Old Line Bancshares significantly better rate of nonperforming and charge-off loans, which may be especially important in a changing economic climate with a possible recession on the horizon.

66.     Regarding KBW's *Selected Transactions Analysis* beginning on Page 85, the Proxy fails to disclose the multiples for each transaction.  Again, the failure to disclose the relevant information regarding the individual transactions themselves is material to investors deciding how to vote on the Proposed Transaction because it makes it impossible for investors to determine whether KBW included outlier transactions and then re-perform the analysis after removing those outliers.  Further, the *One-Day Market Premium* analysis fails to disclose whether and, if so, how KBW accounted for the possibility that part of the transaction premium had already been baked into the "background" stock price prior to the announcement of a transaction, for example due to a "jump" in stock price that occurred after a company announced that it was anticipating a merger before any

18

merger was, in fact, finalized.  *See, e.g., In re Columbia Sec. Litig.*, 155 F.R.D. 466, 483 (S.D.N.Y. 1994) ("The fact that Columbia stock jumped 25 percent when Columbia finally announced in September 1989 that it was engaged in acquisition discussions with an unannounced suitor is convincing evidence that whatever 'acquisition expectations' were previously built into Columbia stock before this date were less than fully confident ones.").  All of this information is material to shareholders and the comparison of the Proposed Transaction to the precedent transaction quartiles without disclosing the information specific to each transaction renders the Proxy false and misleading.

67.     Regarding KBW's *Financial Impact Analysis* on Page 87, the Proxy omits entirely the pro forma assumptions that were analyzed and the projected quantitative impact derived from its analysis, and instead boils the analysis down to blanket statements that "the merger could be accretive to Wesbanco's estimated 2020 EPS and estimated 2021 EPS and could be dilutive to Wesbanco's estimated tangible book value per share as of December 31, 2019," and "each of the tangible common equity to tangible assets ratio, Leverage Ratio, Common Equity Tier 1 Ratio, Tier 1 Capital Ratio and Total Risk-based Capital Ratio as of December 31, 2019 could be lower."  Proxy, 87.  The amounts of these projected financial impacts is material information.

68.     Regarding KBW's *Discounted Cash Flow Analyses* ("DCF") beginning on Page 87 and Page 88, the Proxy omits the projected unlevered after-tax free cash flows on which the entire analysis was based, which renders the analysis misleading and insufficient.  *See, e.g., In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 177 (Del. Ch. 2007).  Further, the Proxy fails to disclose KBW's rationale for: (i) assuming that Old Line Bancshares and Wesbanco would each maintain a tangible common equity to tangible asset ratio of 8.00%, (ii) applying a range of terminal multiples of 9.0x to 14.0x estimated 2025 earnings, and (iii) applying a discount range of 10.0% to 14.0%.

69.     If a proxy discloses financial projections and valuation information, such projections and valuations must be complete, accurate, and honest.  The question is not simply whether there is a

duty to speak, but also whether there may be liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.  *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases).  Accordingly, Defendants have disclosed some of the information related to the projections, assumptions, and inputs relied upon by Defendants' financial advisors, but have omitted crucial line items, reconciliations, and other information.  Thus, Defendants' omission renders the projections disclosed in the Proxy misleading.

70.    In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming shareholder vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)

71.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

72.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of

any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

73.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

74.     The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

75.     Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding the valuation analyses performed by the Company's Financial Advisors in support of its fairness opinion.

76.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

77.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted

information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that the Company's Financial Advisors reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by the Company's Financial Advisors, as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to, separately, review the Company's Financial Advisors' analyses in connection with their receipt of the fairness opinions, question the Company's Financial Advisors as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

78.    The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

79.    The Company is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

80.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

81.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

82.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

83.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

84.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.   The Proxy contains the unanimous

recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

85.    In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

86.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

87.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

88.    Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.    Directing the Defendants to account to Plaintiff for all damages sustained as a result

of their wrongdoing;

       C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and expert fees and expenses; and

       D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated: October 1, 2019

                                   **MONTEVERDE & ASSOCIATES PC**
BY: */s/ Juan E. Monteverde*
                                   Juan E. Monteverde (JM-8169)
                                   The Empire State Building
                                   350 Fifth Avenue, Suite
                                   4405 New York, NY 10118
                                   Tel:(212) 971-1341
                                   Fax:(212) 202-7880
                                   Email: jmonteverde@monteverdelaw.com


**OF COUNSEL:**
                                   *Attorneys for Plaintiff*

**ADEMI & O'REILLY, LLP**
Guri Ademi
Jesse Fruchter
3620 East Layton Avenue
Cudahy, Wisconsin 53110
Tel: (414) 482-8000
Fax: (414) 482-8001
Email: gademi@ademilaw.com
        jfruchter@ademilaw.com

*Attorneys for Plaintiff*