## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **DONALD GABRIEL,** | ) |
| | ) |
|     **Plaintiff,** | )   **Case No. 1:19-cv-09095- RA** |
| | ) |
| **v.** | ) |
| | )   <u>**JURY TRIAL DEMANDED**</u> |
| **OLD LINE BANCSHARES INC., JAMES** | ) |
| **W. CORNELSEN, CRAIG E. CLARK,** | ) |
| **GREGORY STEPHEN PROCTOR JR.,** | ) |
| **ROSIE ALLEN-HERRING, STEPHEN** | ) |
| **K. BREEDEN, JAMES R. CLIFFORD** | ) |
| **SR., STEPHEN J. DEADRICK, JAMES** | ) |
| **F. DENT, ANDRE J. GINGLES,** | ) |
| **THOMAS H. GRAHAM, GAIL D.** | ) |
| **MANUEL, JEFFREY A. RIVEST,** | ) |
| **SUHAS R. SHAH, and JOHN M. SUIT II,** | ) |
| | ) |
|     **Defendants.** | ) |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ......................................................................................................... 1

A    This Matter Should Be Dismissed Under Rule 12(b)(3) for Improper Venue. ................. 3

    1.    Legal Standard for Motions to Dismiss for Improper Venue Under Rule 12(b)(3). ........................................................................................ 3

    2.    Venue Is Not Proper in the Southern District of New York. ................................. 4

B    The Complaint Fails To State a Claim Upon Which Relief May Be Granted. ................. 6

    1.    Legal Standard for Motions to Dismiss for Failure to State a Claim Pursuant to Rule 12(b)(6). ...................................................................... 6

    2.    Plaintiff Fails to Identify Any Material Omission From the Proxy. ....................... 7

        a.    The Alleged Omissions Regarding the Background of the Transaction Are Either Not Actual Omissions or Are Not Material As a Matter of Law. ............................................................. 8

        b.    The Alleged Omissions in the Financial Advisor's Fairness Analysis Are Not Material As a Matter of Law. ....................................... 12

    3.    Plaintiff Fails to Adequately Plead Loss Causation. ............................................. 18

    4.    Plaintiff Fails to State a Claim Against the Individual Defendants Under Section 14(a) or 20(a). ........................................................................ 19

CONCLUSION .......................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 3Com Shareholders Litig.*,
  2009 WL 5173804 (Del Ch. Dec. 18, 2009) .......................................................................16

*Allen v. Penn Central Co.*,
  350 F. Supp. 697 (E.D. Penn. 1972) .....................................................................................9

*Amorosa v. Ernst & Young LLP*,
  672 F. Supp. 2d 493 (S.D.N.Y. 2009) .................................................................................18

*Arnold v. Society for Sav. Bancorp, Inc.*,
  650 A.2d 1270 (Del. 1994) .................................................................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................................6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................................6

*In re BioClinica, Inc. Shareholder Litig.*,
  Civil Action No. 8272-VCG, 2013 WL 5631233 (Del. Ch. Oct. 16, 2013) .........................12

*Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*,
  866 F. Supp. 2d 223 (S.D.N.Y. 2012) ...............................................................................7, 8

*Carlson v. Triangle Capital Corp.*,
  2018 WL 3546232 (E.D.N.C. July 23, 2018) ......................................................................12

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227 (2d Cir.
  2014) ..................................................................................................................................20

*In re CheckFree Corp. Shareholders Litig.*,
  Civil Action No. 3193-CC, 2007 WL 3262188 (Del. Ch. Nov. 1, 2007)..............................17

*City of St. Clair Shores Gen. Emps. Ret. Sys. v. Inland W. Retail Real Estate Tr.,
  Inc.*,
  635 F. Supp. 2d 783 (N.D. Ill. 2009) ....................................................................................9

*In re Columbia Pipeline, Inc.*,
  No. 18 Civ. 3670 (GBD), 2019 WL 4743760 (S.D.N.Y. Sept. 26, 2019)...................... *passim*

*David P. Simonetti Rollover IRA v. Margolis*,
  Civil Action No. 3694-VCN, 2008 WL 5048692 (Del. Ch. June 27, 2008) .........................14

ii

*Dent v. Ramtron Int'l Corp.*,
    Civil Action No. 7950-VCP, 2014 WL 2931180 (Del. Ch. June 30, 2014) ...........................17

*Dias v. Purches*,
    Civil Action No. 7199VCG, 2012 WL 4503174 (Del. Ch. Oct. 1, 2012) ........................15, 16

*Doyle v. Milton*,
    73 F. Supp. 281 (S.D.N.Y. 1947) ...............................................................................9

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189 (2d
    Cir. 2003) ................................................................................................................18

*Erickson v. Corinthian Colleges, Inc.*,
    No. 13 Civ. 4308(PKC), 2013 WL 5493162 (S.D.N.Y. Oct. 1, 2013) .....................................4

*Erickson v. Hutchinson Tech. Inc.*,
    158 F. Supp. 3d 751 (D. Minn. 2016) ..........................................................................17

*Fresno Cty. Employees' Retirement Assoc. v. comScore, Inc.*, 268 F. Supp. 3d 526
    (S.D.N.Y. 2017) .........................................................................................................7

*Gilson v. Pittsburgh Forgings Company*,
    284 F. Supp. 569 (S.D.N.Y. 1968) .........................................................................4, 5

*Gottlieb v. Willis*,
    No. 12-CV-2637, 2012 WL 5439274 (D. Minn. Nov. 7, 2012) ...........................................17

*Grace v. Rosenstock*,
    228 F.3d 40 (2d Cir. 2000)...........................................................................................18

*Kahn v. Wien*,
    842 F. Supp. 667 (E.D.N.Y. 1994) ................................................................................13

*Kaufman v. Mink*,
    No. 70 Civ. 2545, 1970 WL 208 (S.D.N.Y. Nov. 16, 1970) ............................................5

*Kramer v. Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991)...........................................................................................7

*Laborers Local 100 & 397 Pension Fund v. Bausch & Lomb, Inc.*,
    Nos. 06 Civ.1942(HB), 06 Civ.2025(HB), 06 Civ. 2659(HB), 06 Civ.
    2916(HB), 06 Civ. 2918(HB), 06 Civ. 3106(HB), 06 Civ. 3653(HB), 2006
    WL 1524590 (S.D.N.Y. June 5, 2006) ....................................................................4, 5

*Lane v. Page*,
    649 F. Supp. 2d 1256 (D.N.M. 2009) ..........................................................................18

*Lane v. Page,*
    727 F. Supp. 2d 1214 (D.N.M. 2010) ........................................................................18

*Lentell v. Merrill, Lynch & Co., Inc.,* 396 F.3d 161 (2d Cir. 2005) ...........................................18

*Mansell v. SunCoke Energy, Inc.,*
    Case No. 1:19-cv-04165 (S.D.N.Y.) ..........................................................................6

*In re Marsh & McLennan Cos. Sec. Litig.,* 536 F. Supp. 2d 313 (S.D.N.Y. 2007) ...................7, 8

*Mendell v. Greenberg,*
    612 F. Supp. 1543 (S.D.N.Y. 1985) ..........................................................................13

*Montanio v. Keurig Green Mountain, Inc.,*
    237 F. Supp. 3d 163 (D. Vt. 2017) .......................................................................8, 9, 11

*N.Y.C. Employees' Retirement Sys. v. Jobs,*
    593 F.3d 1018 (9th Cir. 2010) ..................................................................................18

*In re OPENLANE, Inc.,* Civil Action No. 6849-VCN, 2011 WL 4599662 (Del.
    Ch. Sept. 30, 2011) ......................................................................................................6

*Parshall v. HCSB Financial Corp.,*
    No. 4:17-cv-01589-RBH, 2017 WL 3130479 (D.S.C. July 24, 2017) ...................15

*In re PNB Holding Co. S'holders Litig.,*
    Civil Action No. 28-N, 2006 WL 2403999 (Del. Ch. Aug. 18, 2006) ...................14

*Rodman v. Grant Foundation,* 608 F.2d 64 (2d Cir. 1979) ..........................................................13

*Rosenfeld v. Time Inc.,*
    No. 17CV9886 (DLC), 2018 WL 4177938 (S.D.N.Y. Aug. 30, 2018) ....................1

*In re Sauer-Danfoss Inc. Shareholders Litig.,*
    65 A.3d 1116 (Del. Ch. 2011) ..................................................................................15

*St. Clair-Hibbard v. American Finance Trust, Inc.,*
    2019 WL 4601720 (S.D.N.Y. Sept. 23, 2019) ............................................................7

*In re Tronox, Inc. Sec. Litig.,*
    769 F. Supp. 2d 202 (S.D.N.Y. 2011) ......................................................................20

*In re Trulia, Inc. Stockholder Litig.,*
    129 A.3d 884 (Del. Ch. 2016) ....................................................................................1

*Union of Needletrades, Indus. and Textile Employees v. May Dep't Stores Co.,*
    26 F. Supp. 2d 577 (S.D.N.Y. 1997) ..........................................................................7

**Statutes**

15 U.S.C. § 78aa ................................................................................................3, 4, 5

15 U.S.C. § 78n.................................................................................................. *passim*

15 U.S.C. § 78t...............................................................................................19, 20

28 U.S.C. § 1391 ...............................................................................................3, 4

28 U.S.C. § 1404..................................................................................................6

28 U.S.C. § 1406 ................................................................................................3, 6

**Other Authorities**

Fed. R. Civ. P. 12 ...............................................................................................3, 6

Matthew Cain & Jill Fisch et al., *The Shifting Tides of Merger Litigation*, 71
    Vand. L. Rev. 603, 604 (Mar. 2018) .......................................................................1

Rachel Graf, *Plaintiffs Firms Follow Easy Merger Money to Federal Court* (Oct.
    7, 2019) .........................................................................................................1

Rule 14a-9, 17 C.F.R. § 240.14a-9 ...................................................................7, 9, 18

Defendants Old Line Bancshares Inc. ("Old Line"), James W. Cornelsen, Craig E. Clark, Gregory Stephen Proctor Jr., Rosie Allen-Herring, Steven K. Breeden, James R. Clifford Sr., Stephen J. Deadrick, James F. Dent, Andre J. Gingles, Thomas H. Graham, Gail D. Manuel, Jeffrey A. Rivest, Suhas R. Shah, and John M. Suit (collectively, "the Individual Defendants", and together with Old Line, "Defendants"), by and through their undersigned counsel, submit this Memorandum in Support of their Motion to Dismiss and state as follows:

## **INTRODUCTION**

This matter involves allegations that the Schedule 14(a) Definitive Proxy Statement ("the Proxy") filed in connection with the proposed acquisition of Old Line by Wesbanco, Inc. ("Wesbanco") is inadequate.  As this Court has recognized, "[i]n recent years, over 96% of publicly announced mergers have attracted a shareholder lawsuit, with many mergers attracting suits in multiple jurisdictions."  *Rosenfeld v. Time Inc.*, No. 17CV9886 (DLC), 2018 WL 4177938, at *1 (S.D.N.Y. Aug. 30, 2018) (quoting Matthew Cain & Jill Fisch et al., *The Shifting Tides of Merger Litigation*, 71 Vand. L. Rev. 603, 604 (Mar. 2018)); *see also In re Trulia, Inc. Stockholder Litig.*, 129 A.3d 884, 891 (Del. Ch. 2016) ("Today, the public announcement of virtually every transaction involving the acquisition of a public corporation provokes a flurry of class action lawsuits alleging that the target's directors breached their fiduciary duty by agreeing to sell the corporation for an unfair price.").  In fact, Monteverde & Associates PC has filed over seventy lawsuits this year alleging inadequate disclosures in connection with upcoming transactions.  *See* Rachel Graf, *Plaintiffs Firms Follow Easy Merger Money to Federal Court*, Law360 (Oct. 7, 2019) (observing that merger challenges have been criticized as "amount[ing] to a shakedown with little benefit beyond lining attorneys' pockets" where "target firms are paying solely just to make these cases go away").

1

While many of these cases lack merit, the Complaint in this case was not even properly pleaded.  Plaintiff filed his Complaint in an improper venue with no connection to the claims raised.  Moreover, the Complaint fails to state a plausible claim upon which relief may be granted because it does not identify any material omission in the Proxy, fails to adequately plead loss causation, and does not contain any factual allegations regarding the Individual Defendants' involvement with and culpability in approving and disseminating the Proxy.  Tellingly, Plaintiff declined to seek injunctive relief in advance of the shareholder vote—as the Court ordered him to do if he desired such relief—suggesting that even he is aware of the deficiencies in his pleading.

## BACKGROUND

Old Line and Wesbanco began discussing the possibility of a merger as early as May 2015.  (Compl. ¶ 36).  In mid-2018, Wesbanco expressed renewed interest in a possible merger with Old Line.  (*Id.*).  On February 27, 2019, the Old Line Strategic Opportunities Committee met, directed management to conduct further merger discussions, and engaged Keefe Bruyette & Woods, Inc. ("KBW") as Old Line's financial advisor.  (Compl. ¶ 37).  After several months of negotiations and discussions between Old Line and Wesbanco, as well as internal discussions of the Old Line Board of Directors regarding other potential strategic options and the exchange ratio offered by Wesbanco, the Old Line Board of Directors unanimously voted to approve the merger and the merger agreement on July 13, 2019.  (Compl. ¶¶ 38-44).  On July 23, 2019, Wesbanco and Old Line executed the merger agreement and issued a joint press release announcing the proposed transaction.  (Compl. ¶ 45).

On September 23, 2019, Old Line filed the Proxy with the Securities and Exchange Commission ("SEC") in connection with the proposed transaction, which contained substantial

information regarding the background of the proposed transaction and financial analyses of the merger consideration and announced that a shareholder vote would take place on October 29, 2019.  (Compl. ¶ 4).  A copy of the Proxy is attached hereto as <u>Exhibit A</u>.  One week later, on October 1, 2019, Plaintiff filed this action, alleging that the Proxy contained "materially incomplete and misleading information concerning the background of the Proposed Transaction and the valuation analyses performed by Old Line Bancshares' financial advisors . . . regarding the Proposed Transaction."  (Compl. ¶ 5).  On October 7, 2019, this Court entered an Order requiring Plaintiff to file and serve on Defendants any motion for a preliminary injunction by "no later than Thursday, October 10, 2019."  (Dkt. 3).  Plaintiff declined to file a motion for preliminary injunction.

## **LAW AND ARGUMENT**

**A**      **This Matter Should Be Dismissed Under Rule 12(b)(3) for Improper Venue.**

       **1.**      **Legal Standard for Motions to Dismiss for Improper Venue Under Rule 12(b)(3).**

Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  Likewise, Rule 12(b)(3) permits a party to move to dismiss a case for "improper venue."  In an action brought under the Securities Exchange Act, venue is "wrong" or "improper" if it is not one of the venues authorized by 28 U.S.C. § 1391 or 15 U.S.C. § 78aa.  Under 28 U.S.C. § 1391, "[a] civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district if located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district

in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).  Under Section 27 of the Securities Exchange Act, 15 U.S.C. § 78aa, an action under the Securities Exchange Act "may be brought in any such district [wherein any act or transaction constituting the violation occurred] or in the district where the defendant is found or is an inhabitant or transacts business."  15 U.S.C. § 78aa(a).

### 2.    Venue Is Not Proper in the Southern District of New York.

Plaintiff has not alleged that Old Line or the Individual Defendants reside in New York, and no events giving rise to this action are alleged to have occurred in New York.  In fact, the Complaint acknowledges that Old Line is headquartered in, and has its principal office in, Maryland.  (*See* Compl. ¶ 12).  The only non-conclusory statement in the Complaint that attempts to link Defendants to New York is the allegation that Old Line's common shares trade on the Nasdaq.  (Compl. ¶ 10).  However, this Court has repeatedly expressed skepticism that the listing of a company's shares on a New York-based exchange is sufficient to establish venue. *See Erickson v. Corinthian Colleges, Inc.*, No. 13 Civ. 4308(PKC), 2013 WL 5493162, at *6 (S.D.N.Y. Oct. 1, 2013) (holding that the fact that the defendant's stock trades on the Nasdaq "does not favor venue in the Southern District of New York"); *Laborers Local 100 & 397 Pension Fund v. Bausch & Lomb, Inc.*, Nos. 06 Civ.1942(HB), 06 Civ.2025(HB), 06 Civ. 2659(HB), 06 Civ. 2916(HB), 06 Civ. 2918(HB), 06 Civ. 3106(HB), 06 Civ. 3653(HB), 2006 WL 1524590, at *4 (S.D.N.Y. June 5, 2006) ("Although Plaintiffs correctly point out that Bausch & Lomb's stock is traded on the New York Stock Exchange ('NYSE'), which is located in the SDNY . . . , these contacts don't do it.  If they did, the SDNY would have even more business and every plaintiff that sued a NYSE firm could nestle in right here at 500 Pearl Street."); *Gilson v. Pittsburgh Forgings Company*, 284 F. Supp. 569, 570-71 (S.D.N.Y. 1968)

4

(rejecting argument that the listing of shares on the NYSE satisfies the "transacts business" requirement of § 78aa); *Kaufman v. Mink*, No. 70 Civ. 2545, 1970 WL 208, at *3 (S.D.N.Y. Nov. 16, 1970) ("[T]hat its stock is listed on the American Stock Exchange, however, [is] insufficient grounds for venue in a § 16(b) action").

Instead, "[a] defendant 'transacts business' in a district within the meaning of Section 27 only when, among other things, its activities within the district constitute a 'substantial part' of its 'ordinary business.'" *Gilson*, 284 F. Supp. at 570. The trading of a defendant's shares "is not really a part of its 'ordinary business' and represents no activity so far as it is concerned." *Id.* at 570-71 (collecting cases). Similarly, a defendant is not "to be found in this district" merely because its stock is listed on an exchange headquartered in this district. *See Kaufman*, 1970 WL 208, at *3.

Moreover, Plaintiff does not allege that he resides in this District or that any of Defendants reside in this District. Plaintiff does not bring this action on behalf of a shareholder class, but nevertheless, does not even allege that the Proxy was disseminated to shareholders residing in this District. On the other hand, the proposed transaction is an acquisition by a West Virginia-based bank of a Maryland-based bank. (Compl. ¶¶ 12, 29-30, 45). The press release referenced in the Complaint was issued in West Virginia. (Compl. ¶ 45). Although the Complaint alleges that Old Line's shares are traded on the Nasdaq, the Complaint contains no factual allegations regarding the Individual Defendants' connections to this District. (*See* Compl. ¶¶ 13-26).

Given the paucity of the allegations contained in the Complaint, this Court should find that venue is not proper in this District. To rule otherwise would permit "every plaintiff that sued a NYSE firm [to] nestle in right here at 500 Pearl Street." *Laborers Local*, 2006 WL

1524590, at *4.[1]  Because the Complaint also fails to state a claim upon which relief may be granted, dismissal under § 1406 is appropriate.  At a minimum, however, this action should be transferred to the District of Maryland, where Old Line is headquartered, pursuant to either § 1406 or § 1404.  *See* Order, ECF No. 7, *Mansell v. SunCoke Energy, Inc.*, Case No. 1:19-cv-04165 (May 28, 2019) (granting motion to transfer because "the plaintiff has not alleged that he or any of the defendants, whether corporate or individual, resides in New York" and "there is no meaningful connection between the instant case and this venue, apart from the corporate defendant's listing of its stock on the New York Stock Exchange").

**B      The Complaint Fails To State a Claim Upon Which Relief May Be Granted.**

   **1.      Legal Standard for Motions to Dismiss for Failure to State a Claim Pursuant to Rule 12(b)(6).**

To survive a motion to dismiss, a complaint must include "enough facts to state a claim for relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Where a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."  *Id.*  "The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is 'not bound to accept as true a legal conclusion couched as a factual allegation,' or to credit 'mere conclusory statements', or '[t]hreadbare recitals of the elements of a cause of action.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

For purposes of deciding a motion to dismiss in a securities action, the Court may consider the Complaint and any relevant public disclosure documents required to be filed with

---

[1] Plaintiff's counsel appears to have so "nestle[d] in right here."  Notably, nearly all of the seventy-plus disclosure-only shareholder actions filed by Plaintiff's counsel this year have been filed in this District, with venue in each based upon the sole allegation that the defendant entity's stock is traded on the NYSE or the Nasdaq.  Thus, it seems that Plaintiff's decision to file in this District is best explained as a self-interested decision made by counsel rather than one based on any consideration of the appropriate venue for this action.

the SEC, including the document alleged to contain inadequate or misleading statements. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991); *Union of Needletrades, Indus. and Textile Employees v. May Dep't Stores Co.*, 26 F. Supp. 2d 577, 579 (S.D.N.Y. 1997).

###        2.        Plaintiff Fails to Identify Any Material Omission From the Proxy.

"Section 14(a) of the Exchange Act bars the dissemination of proxy statements in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." *In re Columbia Pipeline, Inc.*, No. 18 Civ. 3670 (GBD), 2019 WL 4743760, at *6 (S.D.N.Y. Sept. 26, 2019) (quoting *Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223, 238 (S.D.N.Y. 2012) (internal quotation marks omitted).  "In turn, SEC Rule 14a-9 prohibits both the inclusion of any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, and the omission of any material fact necessary in order to make the statements therein not false or misleading." *Id.* (quoting *Bricklayers*, 866 F. Supp. 2d at 238) (internal quotation marks omitted).  "To state a claim under Section 14(a) and Rule 14a-9, a plaintiff must allege that: '(1) a proxy statement contained a material misrepresentation or omission, which (2) caused plaintiff's injury, and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction'" *St. Clair-Hibbard v. American Finance Trust, Inc.*, 2019 WL 4601720, at *4 (S.D.N.Y. Sept. 23, 2019) (quoting *Fresno Cty. Employees' Retirement Assoc. v. comScore, Inc.*, 268 F. Supp. 3d 526, 557 (S.D.N.Y. 2017)).  An omission is material only "if either the SEC regulations specifically require disclosure of the omitted information in a proxy statement, or the omission makes other statements in the proxy statement materially false or misleading." *In re Columbia Pipeline*, 2019 WL 4743760, at *7 (quoting *In re Marsh & McLennan Cos. Sec. Litig.*, 536 F. Supp. 2d 313,

320-21 (S.D.N.Y. 2007)). Moreover, "[t]o succeed on a material omission claim, 'the plaintiff must show that there was a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the *total mix* of information made available." *Id.* (quoting *Bricklayers*, 866 F. Supp. 2d at 238).

Plaintiff alleges that "the Proxy omits two types of material information: (i) information regarding the background of the transaction and the Individual Defendants' potential conflicts of interest, and (ii) information that renders the Company's Financial Advisors' fairness analysis materially false, misleading, or incomplete." (Compl. ¶ 57). As a matter of law, however, neither type of information identified by Plaintiff is "material," and accordingly, Plaintiff fails to state a plausible claim for relief.

> **a. The Alleged Omissions Regarding the Background of the Transaction Are Either Not Actual Omissions or Are Not Material As a Matter of Law.**

According to Plaintiff, the Proxy omits allegedly material information concerning (1) "how Cornelson 'learned' that Wesbanco 'may' have been interested in acquiring the Company in mid-2018"; (2) "the number, timing, substance, and extent of" Cornelson's contacts with other financial institutions as potential acquirers; (3) "the nature of Hovde's concerns regarding the 'process undertaken in the proposed merger'"; and (4) "whether the NDA executed on March 15, 2019 included a standstill agreement and, if so, whether the standstill agreement included a 'Don't Ask, Don't Waive' clause or a 'fall away' provision." (Compl. ¶¶ 58-61). None of this information is material as a matter of law.

First, "[m]erely asking for more detail or background regarding a particular decision is insufficient." *Montanio v. Keurig Green Mountain, Inc.*, 237 F. Supp. 3d 163, 178 (D. Vt. 2017). Rather, a plaintiff must identify the "specific fact" that he believes was omitted. *Id.* (finding allegation that the proxy "fail[ed] to disclose *any details or discussions* regarding potential

alternatives" to be insufficient to state a claim).  Plaintiff's allegation that the Proxy failed to disclose "how" Cornelson learned of Wesbanco's interest in acquiring Old Line is precisely this type of deficient allegation.  Plaintiff does not identify any "specific fact" that he believes was omitted regarding how Cornelson learned of Wesbanco's interest.  *See id.*  Further, Plaintiff does not in any way identify why it would be material to shareholders if Cornelson learned of Wesbanco's interest by a telephone call or letter from Wesbanco, by a communication initiated by Old Line, or by some other means.

Second, it is well established that "[d]rafters of proxy statements have no obligation to discuss every conceivable alternative to the course of action for which management seeks shareholder approval."  *Allen v. Penn Central Co.*, 350 F. Supp. 697, 703 (E.D. Penn. 1972).  "Theoretically the number of alternatives to any [proposal] is infinite.  To drench the shareholder with a flood of information may defeat the very purpose of [Rule 14a-9]."  *Doyle v. Milton*, 73 F. Supp. 281, 285 (S.D.N.Y. 1947); *see also City of St. Clair Shores Gen. Emps. Ret. Sys. v. Inland W. Retail Real Estate Tr., Inc.*, 635 F. Supp. 2d 783, 795 (N.D. Ill. 2009) ("Section 14(a) and Rule 14a-9 do not require corporate officers and directors to present every strategic alternative to the recommended transaction.").  Moreover, a proxy also need not disclose that one bidder was given preferential treatment because "a preference for one bidder over another does not amount to a Section 14(a) violation."  *In re Columbia Pipeline, Inc.*, --- F. Supp. 3d ---, 2019 WL 4743760, at *15-16 (S.D.N.Y. Sept. 26, 2019).  Such "[a]n objection to the negotiation process . . . sounds in breach of fiduciary duty, which is not redressable under Section 14(a)."  *Id.* at *15.

Consistent with this jurisprudence, the Proxy appropriately discloses a summary of Defendants' discussions regarding strategic alternatives and other potential acquirors and discloses ample information regarding the negotiation process with Wesbanco.  Specifically, the

Proxy discloses that "[a]s part of his ongoing responsibilities as President and Chief Executive Officer of Old Line Bancshares, Mr. Cornelson has maintained relationships with executives of financial institutions viewed as strategically desirable partners either as potential acquisition targets or potential acquirors of Old Line Bancshares and Old Line Bank.  This has included meeting with the chief executive officers of both potential acquisition targets and potential acquirors of Old Line Bancshares and Old Line Bank on a regular and ongoing basis." (Proxy, p. 51).  The Proxy further discloses that at the November 19, 2018 Board of Directors strategic planning session, the Board and its financial advisor, KBW, "discussed possible strategic alternatives for Old Line Bancshares, including potential acquisition targets and potential buyers." (Proxy, p. 52).  As disclosed in the Proxy, on July 2, 2019, "the board discussed other potential strategic options for Old Line Bancshares, including the potential interest level of other acquirers in an acquisition of Old Line Bancshares." (Proxy, p. 54).  The Proxy specifically provides that, relevant to the Board's evaluation of the transaction was "Old Line Bancshares' board of directors' review, with the assistance of Old Line Bancshares' management, of strategic alternatives to the merger, including the possibility of remaining independent and the challenges Old Line Bancshares would face in continuing to grow at a rate similar to its historical growth rate." (Proxy, p. 75).  These disclosures provide ample information to shareholders and make clear that the Board considered strategic alternatives.  There was no obligation to disclose details regarding every strategic alternative considered by the Individual Defendants, and no statement in the Proxy has been rendered false or misleading for lack of such unnecessary details.

Third, for the same reasons, the disclosures regarding Hovde's concerns with the proposed transaction are more than adequate.  The Proxy does, in fact, identify Hovde's particular concerns: the exchange ratio and the process undertaken.  (*See* Proxy, pp. 54-55).  The

Proxy also provides a fair summary of the instances when Hovde voiced these concerns, as well as the negotiation process and the steps taken to resolve Hovde's concerns.   (*See id.*). Specifically, the Proxy discloses that, on June 25, 2019, "Hovde expressed concern about the exchange ratio and the process undertaken in the proposed merger." (Proxy, p. 54).  The Proxy further states that, on June 26, 2019, "Hovde reiterated the concerns he expressed during the June 25, 2019 phone call with Mr. Cornelson and KBW." (*Id.*).  The Proxy explains that, during the special meeting on July 2, 2019, "director Eric Hovde re-iterated his concern about the exchange ratio and the process undertaken in the proposed merger.  Following Mr. Hovde's comments, there was a brief discussion regarding the age of members of Old Line Bancshares' senior management and additional discussion on the proposed exchange ratio." (Proxy, p. 55).  The Proxy further discloses that Old Line and Wesbanco then engaged in discussions and negotiations "in an attempt to craft a solution that would satisfy Wesbanco, Old Line Bancshares, and Mr. Hovde" and that "[a]s part of these discussions, KBW again asked Wesbanco and Mr. Clossin to increase the exchange ratio," which Wesbanco declined to do.  (*Id.*).  Following these additional discussions and negotiations, Hovde "reconsidered and agreed to vote to approve the merger and the merger agreement." (*Id.*).  Given the specific disclosures regarding Hovde's concerns already included in the Proxy, Plaintiff's allegation that the Proxy "failed to disclose the nature of [those] concerns" is simply not plausible.  (Compl. ¶ 60).  Plaintiff cannot state a plausible § 14(a) claim by "[m]erely asking for more detail or background regarding a particular decision." *See Montano*, 237 F. Supp. 3d  at 178.

Fourth, courts have repeatedly rejected the theory that a company must disclose the precise terms of a non-disclosure or standstill agreement.  *See In re Columbia Pipeline, Inc.*, 2019 WL 4743760, at *14 (holding that the omission of the existence of standstill agreements

was not material "[a]bsent . . . any indication that the standstills actually impeded the competing bidders' ability to bid"); *Carlson v. Triangle Capital Corp.*, 2018 WL 3546232, at *7 (E.D.N.C. July 23, 2018) (rejecting the argument that the proxy contained a material omission based on alleged failure to disclose whether any of the confidentiality agreements entered into with interested parties included standstill provisions including "don't ask don't waive" provisions); *In re BioClinica, Inc. Shareholder Litig.*, Civil Action No. 8272-VCG, 2013 WL 5631233, at *10 (Del. Ch. Oct. 16, 2013) ("The Plaintiffs admit that they have no evidence that the NDAs contained such clauses. Instead, the Plaintiffs argue that 'they are being asked to plead what they cannot possibly know.' Yet no one is 'asking' the Plaintiffs to bring a claim about hypothetical don't-ask-don't-waive clauses. The Plaintiffs have the burden of bringing claims based on actual facts and reasonable inferences, rather than speculation. Obviously no disclosure could, or should attempt to, describe all clauses not included in NDAs, or, for that matter, all breaches of duty the directors have not committed.").

The Complaint does not contain any "factual support for the claim that the confidentiality agreement[] at issue may contain such clauses that could conceivably block post-signing superior proposals, other than what appears to be hypothetical speculation." *Carlson*, 2018 WL 3546232, at *7. Absent any factual allegation that the non-disclosure agreement did contain a standstill agreement or did impede competing bidders' ability to bid on Old Line, Plaintiff fails to adequately plead the existence of a material omission relating to the non-disclosure agreement with Wesbanco. Accordingly, Plaintiff fails to state a plausible claim for relief on this basis.

### b.   *The Alleged Omissions in the Financial Advisor's Fairness Analysis Are Not Material As a Matter of Law.*

Plaintiff also alleges that the Proxy omits material information regarding KBW's Fairness Opinion and the various valuation analyses that KBW performed to render its opinion. (Compl.

¶¶ 62-70).[2]  The information allegedly omitted from the Proxy can be characterized as (1) financial projections, namely, cash flow projections for the standalone companies and the pro forma combined company; and (2) underlying inputs, assumptions, and multiples used in the Fairness Analysis, namely, the individual financial metrics for each of the selected companies and the multiples for each of the selected transactions used in KBW's *Selected Companies Analysis* and *Selected Transactions Analysis*, the pro forma assumptions used in KBW's *Financial Impact Analysis*, and the "projected unlevered after-tax free cash flows" used in KBW's *Discounted Cash Flow Analyses.* (*Id.*).

With respect to the allegedly omitted financial projections, "[n]either the SEC nor the Second Circuit have required that financial projections be included in proxy materials." *Mendell v. Greenberg*, 612 F. Supp. 1543, 1550 (S.D.N.Y. 1985).  To the contrary, courts have noted that "proxy solicitations need only provide the full objective facts upon which investors can make their own judgments as to value and need not, and most often should not, 'embellish [the facts] with speculative financial predictions.'" *Kahn v. Wien*, 842 F. Supp. 667, 676 (E.D.N.Y. 1994) (quoting *Rodman v. Grant Foundation*, 608 F.2d 64, 72 (2d Cir. 1979)); *see also Arnold v. Society for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1282 (Del. 1994) ("[W]here an investment advisor promulgates a 'best case' projection predicated on an interplay of several, uncertain variables, the forecasted value need not be disclosed because it is too speculative and thus immaterial. . . . Disclosing an overly optimistic per share figure may be harmful because it might induce stockholders to hold out for an elusive, higher bid.  This risk cannot be reduced

---

[2] In Paragraph 62 of the Complaint, Plaintiff also alleges that the Proxy does not disclose enough information regarding "the Financial Advisors' potential conflicts of interest."  (Compl. ¶ 62). The Complaint never expands upon this allegation, and it appears likely to be a vestige from another, unrelated complaint prepared by Plaintiff's counsel.  Nevertheless, to the extent Plaintiff intends to assert the existence of a material omission based on some undefined conflict of interest of KBW, this single conclusory allegation is insufficient to support a plausible claim.

significantly by attempting to qualify the figure.   In fact, disclosure of an unreliable share valuation can, under some circumstances, constitute material misrepresentation.").   As a result, courts frequently find that financial projections are not material to shareholders where they are unreliable or speculative.   *David P. Simonetti Rollover IRA v. Margolis*, Civil Action No. 3694-VCN, 2008 WL 5048692, at *10 (Del. Ch. June 27, 2008) (where the proxy statement supplies at least some of the projections given to the financial advisors, even if it does not include other projections that were not relied upon, a court has held that "it is doubtful that any such additional disclosures would have materially altered the total mix of information provided").

Although Plaintiff alleges that "cash flow projections were prepared and provided to Wesbanco and the Company's Financial Advisors," the Proxy makes clear that any such cash flow projections were not considered in KBW's Fairness Opinion.   The Proxy specifically provides that KBW's discounted cash flow analysis was performed—not with actual cash flow projections of Old Line—but with "publicly available consensus 'street estimates' for Old Line Bancshares and assumed long-term growth rates for Old Line Bancshares provided by Old Line Bancshares management."   (Proxy, p. 88).   Critically, the Proxy explains that "Old Line Bancshares does not make public disclosure of forecasts or projections of its expected financial performance because of, among other things, the inherent uncertainty of the underlying assumptions and estimates."   (Proxy, p. 90).

Plaintiff has not alleged the existence of any such circumstances which would render Old Line's cash flow projections sufficiently reliable to aid stockholders in making an informed judgment.   *In re PNB Holding Co. S'holders Litig.*, Civil Action No. 28-N, 2006 WL 2403999, at *16 (Del. Ch. Aug. 18, 2006) (remarking that because projections are "essentially predictive," they are not material as a matter of law "unless the circumstances of their preparation support the

conclusion that they are reliable enough to aid the stockholders in making an informed judgment"). Indeed, Old Line's speculative cash flow projections were not even relied upon by KBW in its Fairness Opinion. *See, e.g.*, *Parshall v. HCSB Financial Corp.*, No. 4:17-cv-01589-RBH, 2017 WL 3130479, at *5 (D.S.C. July 24, 2017) (finding that "the alleged financial projections sought by Plaintiff would not have been viewed by the reasonable investor as having significantly altered the total mix of information" where the projections were not provided to the financial analyst and were not publicly disclosed because of their speculative nature). Accordingly, Plaintiff has not sufficiently alleged facts showing that Old Line's cash flow projections would be material to a reasonable shareholder, and cannot state a plausible claim for relief based on this purported omission.

With respect to the allegedly omitted underlying inputs, assumptions, and multiples used in the Fairness Analysis, Plaintiff's claim likewise fails. It is generally accepted that all that is required in a proxy statement is a fair summary of the financial advisor's analyses. *See Dias v. Purches*, Civil Action No. 7199VCG, 2012 WL 4503174, at *9 (Del. Ch. Oct. 1, 2012) ("[T]he criteria used to select the ranges, multiples, or transactions that the financial advisers use in their analyses are not material."); *In re Sauer-Danfoss Inc. Shareholders Litig.*, 65 A.3d 1116, 1133 (Del. Ch. 2011) ("The summary of the discounted cash flow analysis did not mislead stockholders into thinking that the discounted cash flow analysis's exit multiple range was derived from the comparable companies. It was obvious from the disclosures that the bankers exercised their subjective judgment. The additional information was immaterial."). Although "stockholders are entitled to a fair summary of the work completed by the financial advisor that the Board relied upon, . . . 'this duty does not require directors to provide financial information that is merely helpful or cumulative or the full range of information needed to permit

15

stockholders to make an independent determination of fair value.'" *Dias*, 2012 WL 4503174, at

*9 (quoting *In re OPENLANE, Inc.*, Civil Action No. 6849-VCN, 2011 WL 4599662, at *13

(Del. Ch. Sept. 30, 2011)).

The Proxy in this case is 140 pages, and provides substantial data and analyses regarding

Old Line and Wesbanco, including historical financial data for Old Line, selected pro forma

combined financial data, comparative per share market price, pro forma comparative per share

data, analyses of comparable companies and comparable transactions, earnings per share

estimates, and calculations of various financial metrics. (*See* Proxy, pp. 83-88,  90-91, 116-123).

This information is more than adequate to permit a reasonable stockholder to evaluate the

transaction and to understand the substantive work performed and conclusions reached by the

parties' financial advisors. *See In re 3Com Shareholders Litig.*, 2009 WL 5173804, at *3 (Del

Ch. Dec. 18, 2009) (finding that plaintiffs "failed to assert a colorable reason as to why

management should be required to provide full versions of the projections underlying the already

disclosed summaries" and noting that it would not "alter the total mix of available information

and may even undermine the clarity of the summaries").

Indeed, the summary of the work performed by KBW is quite detailed.  Among other

things, the Proxy discloses the documents reviewed and analyzed by KBW (p. 78); the

assumptions made by KBW in connection with its analyses (pp. 79-82); the implied transaction

value and implied transaction multiple utilized by KBW (p. 82); a detailed summary of KBW's

*Old Line Selected Companies Analysis*, including the specific companies selected, the basis for

KBW's selection, and a summary of the financial performance, financial condition, and market

performance of Old Line and the selected companies (pp. 82-84); a detailed summary of KBW's

*Selected Transactions Analysis*, including the specific transactions selected, the basis for KBW's

16

selection, and a summary of the implied transaction statistics derived by KBW and how they compared to the proposed transaction (pp. 85-87); and a summary of the *Discounted Cash Flow Analyses* performed by KBW, the inputs used in those analyses, and the implied share values resulting from those analyses (pp. 87-88).

These are precisely the type of disclosures that courts have found adequate time and time again. *See In re CheckFree Corp. Shareholders Litig.*, Civil Action No. 3193-CC, 2007 WL 3262188, at *3 (Del. Ch. Nov. 1, 2007) (finding similar disclosures adequate where "[o]ver the course of seven pages, the proxy statement detail[ed] the various sources upon which [the financial advisor] relied in coming to its conclusions, explain[ed] some of the assumptions and calculations management made to come to its estimates, note[d] exactly the comparable transactions and companies [the financial advisor] used, and describe[d] or otherwise disclose[d] management's estimated earnings and estimated EBITDA" for the next few years); *Gottlieb v. Willis*, No. 12-CV-2637 (PJS/JSM), 2012 WL 5439274, at *6 (D. Minn. Nov. 7, 2012) (finding similar disclosures sufficient because plaintiff was not entitled to all of the data necessary "to replicate" the financial advisor's analysis); *Erickson v. Hutchinson Tech. Inc.*, 158 F. Supp. 3d 751, 760 (D. Minn. 2016) (finding a low likelihood of success on the merits where defendant's proxy "approache[d] 200 pages in length and [gave] shareholders a more than sufficient summary of BofA Merrill Lynch's financial analysis"); *Dent v. Ramtron Int'l Corp.*, Civil Action No. 7950-VCP, 2014 WL 2931180, at *12 (Del. Ch. June 30, 2014) (finding proxy disclosure adequate where the publicly traded companies used in the analysis were disclosed).

In light of the Proxy's fair and adequate disclosures of the substantive work performed by KBW, the disclosure of additional financial metrics, inputs, and assumptions used in the Fairness

Analysis would not significantly alter the total mix of information available to stockholders and would not be material to the decision of a reasonable stockholder in this matter.

### 3. Plaintiff Fails to Adequately Plead Loss Causation.

Plaintiffs bringing claims under Section 14(a) and Rule 14a-9 must plead both loss causation and transaction causation. *Grace v. Rosenstock*, 228 F.3d 40, 48 (2d Cir. 2000). In order to plead loss causation, a plaintiff must plead "the economic loss and proximate cause" he has in mind. *Lane v. Page*, 649 F. Supp. 2d 1256, 1277 (D.N.M. 2009) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)); *N.Y.C. Employees' Retirement Sys. v. Jobs*, 593 F.3d 1018, 1023 (9th Cir. 2010) ("In well-pleaded § 14(a) claims, loss causation connects the proxy misstatements with an actual economic harm."); *Lane v. Page*, 727 F. Supp. 2d 1214, 1228 (D.N.M. 2010) ("Loss causation refers to the causal connection between the wrongful conduct and the economic loss for which the plaintiff seeks relief, and resembles a form of proximate cause.").

Courts have held that "loss causation allegations are insufficient where they do not 'speak to the relationship between the fraud and the loss of the investment.'" *Amorosa v. Ernst & Young LLP*, 672 F. Supp. 2d 493, 505 (S.D.N.Y. 2009) (quoting *Lentell v. Merrill, Lynch & Co., Inc.*, 396 F.3d 161, 174 (2d Cir. 2005)). "For example, it is insufficient under the law of this Circuit to allege simply that a defendant's misstatements or omissions 'induced a disparity between the price plaintiff paid for [securities] and their true investment quality.'" *Id.* (quoting *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 198 (2d Cir. 2003)).

The Complaint contains a single boilerplate allegation that the merger consideration "fails to adequately compensate [shareholders] for the intrinsic value of their shares." (Compl. ¶ 33). The Complaint, however, does not plead an economic injury resulting from the Proxy itself with any particularity. Plaintiff makes no effort to even connect the allegation that the

merger consideration is inadequate to the alleged omissions in the Proxy.  Nor does Plaintiff allege with any particularity the value he believes he should be receiving in connection with the proposed transaction.  This is insufficient to plead loss causation requisite for a Section 14(a) claim, and accordingly, provides an additional basis for dismissal.

### 4.  Plaintiff Fails to State a Claim Against the Individual Defendants Under Section 14(a) or 20(a).

The Complaint is particularly devoid of allegations supporting Plaintiff's contention that the Individual Defendants prepared, approved, and disseminated the Proxy at issue.  While the Complaint alleges that the Individual Defendants were involved in negotiating, reviewing, and approving the proposed transaction, that does not suggest that the Individual Defendants prepared and/or approved the Proxy itself.  (*See* Compl. ¶¶ 84-85).  Unlike a registration statement or an annual report, a proxy is not required to be signed by all directors, and the Proxy here was not signed by <u>any</u> of the Individual Defendants.  (*See generally* Proxy).  In fact, there are no statements contained within the Proxy that indicate that the Individual Defendants reviewed the Proxy before it was filed with the SEC and disseminated to shareholders.  (*See generally id.*).  Although the Complaint alleges—without any apparent basis to do so—that "[t]he Individual Defendants participated in drafting and/or gave input on the content of [the] descriptions" of the various issues and information that they reviewed and considered, the Complaint does not contain any factual allegations which support this bald assertion.  (*See* Compl. ¶ 85).  Absent any specific factual allegations regarding the Individual Defendants' role in regard to the Proxy, the conclusory allegations of Plaintiff are insufficient to state a claim against the Individual Defendants under Section 14(a).

The Complaint further fails to state a claim against the Individual Defendants under Section 20(a).  To state a claim under Section 20(a), a plaintiff must allege "(1) a primary

violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *In re Columbia Pipeline*, 2019 WL 4743760, at *8 (quoting *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014)). A control person liability claim must be "summarily dismissed . . . if a court finds that a plaintiff's Section 14(a) claim warrants dismissal." *Id.*

Because Plaintiff fails to state a plausible claim under § 14(a), Plaintiff's § 20(a) claim fails for lack of a predicate claim. Additionally, the "[s]tatus of defendants as directors, 'standing alone, is insufficient to establish their control.'" *In re Tronox, Inc. Sec. Litig.*, 769 F. Supp. 2d 202, 208 (S.D.N.Y. 2011). The Complaint is not only devoid of any factual allegation that the Individual Defendants prepared, approved, or disseminated the Proxy, but the Complaint also fails to plead that the Individual Defendants had "control" over the Proxy or were "culpable participants" in the purported material omissions from the Proxy. Plaintiff does not sufficiently plead control and culpability simply by asserting that the Individual Defendants should be held responsible "[b]y virtue of their positions as officers and/or directors of the Company." (Compl. 82). Having failed to properly allege that the Individual Defendants had "control" over the Proxy or were "culpable" with regard to its alleged material omissions, Plaintiff's Section 20(a) claim fails for this additional reason.

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendants respectfully request that Plaintiff's Complaint be dismissed with prejudice.

Dated: October 29, 2019

/s/ Matthew S. Mulqueen

Matthew S. Mulqueen (NY Bar No. 4763386)
R. Mark Glover (*pro hac vice* to be filed)
Kristine L. Roberts (*pro hac vice* to be filed)
BAKER, DONELSON, BEARMAN, CALDWELL
& BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, Tennessee  38103
901-526-2000 (phone)
901-577-2303 (fax)
mmulqueen@bakerdonelson.com

*Attorneys for Defendants*